IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD and CINDY ROCKWELL, Individually and as Co-Administrators of the Estate of SCOTT ROCKWELL, Deceased, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NUMBER |
| v. | § § | 3:08-CV-251-M |
| CITY OF GARLAND, TEXAS, LIEUTENANT WILLIAM H. BROWN, AND OFFICERS D.J. SCICLUNA, D.D. RALEY, C. OHLDE, B. BURLESON, M. GARCIA, JOHN DOE, and JANE DOE, | § § § § § § § § | ECF |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY**

Scott D. Levine
State Bar No. 00784467
Baxter W. Banowsky
Texas Bar No. 00783593

**BANOWSKY & LEVINE, P.C.**

12801 N. Central Expressway
Suite 1700
Dallas, Texas 75243
Telephone: (214) 871-1300
Facsimile: (214) 871-0038

**ATTORNEYS FOR THE
INDIVIDUAL DEFENDANTS**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

RULES AND STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . 2

III. ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. Federal Claim For Excessive Force . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. Applicable Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Neither Officer Ohlde nor Lt. Brown Used Any Force . . . . . . . . . . . . . . 12

        3.    The Plaintiffs' Claims are Barred by Qualified Immunity . . . . . . . . . . . 13

            (a)    Officer Ohlde Did Not Use Any Force Against Rockwell . . . . . . 13

            (b)    Lt. Brown Only Used a "Pepper Ball" Gun to Defend Himself . . 14

            (c)    Officers Burleson, Raley, Scicluna, and Garcia Did Not Violate Scott Rockwell's Constitutional Rights or Act Objectively Unreasonably . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C. State Law Claims of Assault and Battery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        1. Applicable Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.    Neither Officer Ohlde Nor Lt. Brown Assaulted or Battered Rockwell . 18

            (a)    Officer Ohlde Did Not Assault or Batter Rockwell . . . . . . . . . . . 18

            (b)    Lt. Brown Did Not Assault or Batter Rockwell . . . . . . . . . . . . . . 18

        3. The Officers' Conduct was Justified . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.      Plaintiffs' Claims Are Barred by Official Immunity . . . . . . . . . . . . . . . 19

        (a)     Officer Ohlde and Lt. Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        (b)     Officer Burleson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        (c)     Officers Raley, Scicluna and Garcia  . . . . . . . . . . . . . . . . . . . . . . 20

IV. REQUEST FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## INDEX OF AUTHORITIES

## CASES

*Bazan v. Hidalgo County, et al.*, 246 F.3d 481 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bolton v. City of Dallas*, 472 F.3d 261 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brumfield v. Holmes*, 551 F.3d 322 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cantu v. Rocha,, et al.*, 77 F.3d 795 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Casanova v. City of Brookshire*, 119 F. Supp. 2d 639 (U.S. Dist. 2000) . . . . . . . . . . . . . . . . . . 17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) . . . . . . . . . . 10

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Cross v. City of Grand Prairie*, 2000 U.S. Dist. LEXIS 2294
(February 28, 2000, N. Dist. Tex.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

*Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Estate of Steven Everett Shaw v. Sierra et al.*, 2010 U.S. App. LEXIS 3397
(5th Cir. February 17, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graham v. Connor, et al.*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) . . . . . . 10, 11

*Harlow v. Fitgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 396 (1982) . . . . . . . . . . . . . . . . 10

*Hart v. O'brien*, 127 F.3d 424 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hudspeth v. City of Shreveport*, 270 Fed. App. 332 (5th Cir. March 9, 2008) . . . . . . . . . . . . . . 11

*James v. Beltex Corp.* 2004 U.S. Dist. LEXIS 988 (N.D. Tex. January 14, 2004) . . . . . . . . . . 16

*Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 1096 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Moore v. Detective Boy, et al.*, 200 U.S. Dist. LEXIS 12261
(August 24, 2000 N. Dist. Tex.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pierce v. Smith*, 117 F.3d 866 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 9

*Roe v. Texas Dep't of Protective and Regulatory Services*, 299 F.3d 395 (5th Cir. 2002) . . . . . . 17

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.),
cert. denied, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992) . . . . . . . . . . . . . . . . . . . . . . . 9

*Tennessee v. Garner, et al.*, 471 U.S. 1, L. Ed. 2d 1, 105 S. Ct. 1694 (1985) . . . . . . . . . . . 12, 16

*Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . 16

*Williams v. United States*, 2009 U.S. Dist. LEXIS 100154
(S. Dist. October 20, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## RULES AND STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9,10, 16

Fed. R. Civ. P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Penal Code § 9.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. Penal Code § 9.33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Tex. Penal Code § 9.51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD and CINDY ROCKWELL,<br>Individually and as Co-Administrators<br>of the Estate of SCOTT ROCKWELL,<br>Deceased, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | CIVIL ACTION NUMBER |
| v. | §<br>§ | 3:08-CV-251-M |
| CITY OF GARLAND, TEXAS,<br>LIEUTENANT WILLIAM H. BROWN,<br>AND OFFICERS D.J. SCICLUNA,<br>D.D. RALEY, C. OHLDE, B. BURLESON,<br>M. GARCIA, JOHN DOE, and<br>JANE DOE, | §<br>§<br>§<br>§<br>§<br>§ | ECF |
| Defendants. | §<br>§ | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rule 56.5 of the Local

Rules of the United States District Court for the Northern District of Texas, Defendants

Lieutenant William H. Brown ("Brown") and Officers D.J. Scicluna ("Scicluna"), D.D. Raley

("Raley"), C. Ohlde ("Ohlde"), B. Burleson ("Burleson"), and M. Garcia ("Garcia") (collectively,

the "Individual Defendants") file their Brief in Support of their Motion for Summary Judgment,

and state:

## I. SUMMARY

As more fully set forth below, Defendants move for summary judgment on each of the

claims asserted by Plaintiffs Richard and Cindy Rockwell, individually and as co-administrators

DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY **- Page 1**

of the Estate of Scott Rockwell in the above-referenced action. Defendants seek summary judgment with respect to the Plaintiffs' claims of excessive force pursuant to 42 U.S.C. § 1983 and assault and battery pursuant to state law. Summary judgment is sought by Defendants with respect to Plaintiffs' federal claim pursuant to 42 U.S.C. § 1983 based upon the affirmative defense of qualified immunity. Specifically, Defendants did not violate a clearly established constitutional right of Scott Rockwell, nor was the Defendants' use of force "objectively unreasonable." Summary Judgment is also sought by Defendants with respect to Plaintiffs' state law claims of assault and battery based upon the affirmative defense of official immunity. Specifically, a reasonable police officer, under the circumstances of this case, could have determined that he or she was justified in utilizing the force employed by the officers. Additionally, with respect to Officer Ohlde and Lt. Brown, Plaintiffs cannot, as a preliminary matter, establish the elements of assault and battery.

## II. UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT

Defendants' are entitled to Summary Judgment based on the following uncontested facts:[1]

1.      Scott Rockwell ("Rockwell") was a twenty seven year old adult male who stood over six feet tall and weighed more than 250 pounds. (Plaintiff's Original Complaint).

2.      As of February 14, 2006, Rockwell lived at 721 John Glen Drive, Garland, Texas 75040 (hereinafter, the "Residence"). (App. p. 116). Rockwell was living at the Residence with his parents, Cindy Rockwell and Richard Rockwell. (App. pp. 116; 132).

---

[1]The following facts are supported with detailed record citations in Defendants' Motion for Summary Judgment. Detailed citations to the record are omitted herein for brevity; however, citations to the page(s) in the Appendix where support for such facts may be found is included herein for the Court's convenience.

DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY - Page 2

3.      Rockwell was emotionally disturbed.  His parents had forcibly and involuntarily admitted him to various mental institutions.  (App. pp. 83 - 84; 188 - 197).  Rockwell had been diagnosed as bipolar/schizophrenic, depressed, and suicidal.  (App. pp. 58; 82; 107; 187).  When he stopped taking his medication, he would hear voices and have conversations with the "devil."  (App. pp. 38; 43 - 44; 182).  He also engaged in destructive and violent behavior.  (App. pp. 18 - 19; 50 - 51; 114; 153).

4.      Rockwell had attempted suicide on more than one occasion.  (App. pp. 82, 181, & 196).

5.      Rockwell had threatened his parents in the past and had previously assaulted his father.  (App. pp. 36-37, 50-51, 88-91, 94, 102, 112-114, 151-152, & 216).

6.      According to his parents, Rockwell had become increasingly unstable since the beginning of February.  (App. pp. 31-34, 44-46, 64-65, 119, & 136-137).  He had stopped taking his medication.  (App. pp. 38, 44-45, & 136-137).  He threw a rachet through the television.  (App. pp. 31-34, 44-46, 64-65, 119, & 136-137).   From the beginning of February, Rockwell's mental condition and stability diminished.  (App. pp. 31-34, 83-84, 117, 120. 137, & 200).   He began hearing voices.  (App. pp. 44 & 188).  He refused to see a doctor or take his prescription medications.  (App. pp. 38, 44-45, 136-137, 168, & 220).  He was behaving "unpredictably."  (App. pp. 39, 46, 50-51, 61, 83-84, &106).  Rockwell's parents were forced to hide anything that he might use as a weapon.  (App. pp. 9, 59-60, 68-69, 141, 148, & 221).  Cindy Rockwell would sleep in the family room with the washing machine barricading the door, holding onto her car keys and her cell phone, to protect herself from her son.  (App. pp.  143-145, & 221).

7.     On the evening of February 14, 2006, Rockwell was in his room, banging on and clawing at the walls. (App. pp. 31-34, 61-62, 120, 128-129, 151-152, & 216-217). He was hearing voices, having conversations with himself, and complaining that he had been sexually assaulted. (App. pp. 9, 26-27, 128-129, & 161-162).

8.     His parents believed that he was under the influence of illegal drugs. (App. pp. 31-34, 63-65, 119-120, 130-131, & 221).

9.     At one point during the evening, he came out of his room and raised his fist at his mother as if to hit her. (App. pp. 9, 27, 52-53, 123-124, 126-127, 153, 169, & 183-186). Cindy Rockwell called 911 because she felt threatened and feared for her safety. (App. pp. 9, 52-53, 125, 132, 151, 171, 202, 216-217, & 221). Richard Rockwell intended to obtain a mental health warrant the following morning, as he had done in the past, because he and Cindy Rockwell believed that Rockwell had once again become a danger to himself and others. (App. pp. 47-50, 54-56, 85-88, 106, 157-158, & 205-208). Cindy Rockwell was not willing to wait until morning. (App. pp. 54-55, 67, 72, 106, & 158). She called the police so that they would come to the Residence and forcibly admit Rockwell to a mental institution that night. (App. pp. 132, 134-135, 139, & 156-158).

10.     The first Officers to arrive at the scene were Officers Ohlde and Burleson. (App. pp. 26-27 & 139-140). They arrived shortly after 8:30 p.m. (App. pp. 26-27). Thereafter, Lt. Brown, and Officers Scicluna, Garcia and Raley arrived. (App. pp. 165-167).

11.     Richard Rockwell said, "hello," to the Officers and then went into the "Family Room." (App. pp. 66, 68 to 71, 107-108, & 11 to 112). He understood that the Officers were going to arrest Rockwell and take him to a mental hospital. (App. pp. 74 to 79, & 111). He

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY**
**JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY** - Page 4

believed that Rockwell was going to resist the Officers' efforts to arrest him, and he was particularly concerned that Rockwell might be violent when the police arrived. He did not want to, nor did he, witness the arrest. (App. pp. 78-79 & 92-93). When asked in his deposition, Richard Rockwell admitted that it did not surprise him to learn that his son attacked the Officers with knives. (App. pp. 69-70, 72, 80-81, & 118).

12.     Cindy Rockwell spoke with the Officers. (App. pp. 8, 26-27, 78, & 145-146). She told the Officers that (1) Rockwell had several mental problems and had been refusing to take his medication for some time (App. pp. 9, 26-27, 38, 168, & 221); (2) he had raised his fist as if to hit her and that she felt threatened by his conduct (App. pp. 9, 26-27, 125, 151-155, 169, 171, 184-185, & 216-217); (3) she felt the need to hide anything from him that could be used as a weapon (App. pp. 9, 26-27, 141, 145-146, 148, & 168); (4) she believed that he was unarmed (App. pp. 9, 26-27, 145-148, 172-173, & 220); (5) she believed he may be under the influence of illegal drugs (App. pp. 9 & 221); and (6) she believed that if the Officers left him at the Residence his behavior would continue to deteriorate. (App. pp. 9, 27, &167-170).

13.     The Officers personally observed Rockwell while they were in the Residence. They attempted to talk to Rockwell. (App. pp. 9, 18-19, 26-27, 148-149, & 160). Rockwell threatened the Officers from inside his room (App. pp. 9 & 12) , and made troubling statements to the Officers to the effect that he had been sexually assaulted (App. pp. 9, 18, 26-27, 159, & 161-162), continued to violently bang against his walls. (App. pp. 9, 12, 26-27, 62, 109-110, & 128-129).

14.     Officer Raley also recalled, and communicated to the other Officers, that the Garland SWAT team had previously been to the Residence. (App. pp. 2 & 18). They had

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY** - Page 5

apprehended Rockwell because he had reportedly threatened his parents with a bow and arrow and assaulted Richard Rockwell. (App. pp. 2, 18, 89,-91, 113, & 120).

15.    The decision was made to arrest Rockwell, because Rockwell: (1) had committed an act of family violence (App. pp. 2, 8, 18, 26-27, 22, & 169); (2) had a history of violent and suicidal behavior (App. pp. 18-19 & 221); (3) appeared to be unstable, violent, and unpredictable (App. pp. 2 & 115); and (4) may have been under the influence of illegal drugs. (App. pp. 2, 9, & 221). Additionally, it appeared to the Officers, based upon the totality of the circumstances, that if Rockwell were left in the Residence, he posed a danger to himself and others. (App. pp. 207-208).

16.    A "not-to-scale" diagram of the Residence was attached by the Plaintiffs to their First Amended Complaint (hereinafter, the "Diagram"). (Doc. 16 at p. 10). During the course of the arrest, Rockwell sprang from the room described in the Diagram as "Scott's Bedroom." (App. pp. 3, 12-13, & 27). Rockwell was making a loud roaring sound and wielding an 8 inch serrated knife in each hand. (App. pp. 5-6, 15-16, & 27).

17.    As Rockwell emerged from his room, Officers Burleson and Ohlde were positioned at the east end of the hallway between the two unoccupied bedrooms. (App. pp. 8 & 27). Lt. Brown was positioned in the doorway of the bathroom across from "Scott's Bedroom." (App. p. 3). Officer Scicluna had forced open the door to "Scott's Bedroom," and was in the hallway moving towards the "Living Room." (App. pp. 22-23). Officer Raley was in the "Entry Way" at the end of the hallway and Officer Garcia was in the "Living Room." (App. pp. 12-13 & 19). Richard and Cindy Rockwell were in the "Family Room" which was a converted garage. (App. pp. 35, 80-81, 151-152, 210, & 21-217).

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY** - Page 6

18.     As he emerged from his bedroom, Rockwell was making a "roaring" sound and holding the two serrated knives up near his head, pushing them forward in a stabbing motion. (App. pp. 8 & 26-27).   Officer Burleson and Rockwell were standing face-to-face and made eye contact. (App. p. 8).   Officer Burleson had his weapon holstered for safety purposes, as he planned on physically securing Rockwell. *Id.*  When Burleson saw the look in Rockwell's eyes and realized Rockwell was holding two large knives by his head, Burleson immediately yelled "knives" to warn his fellow Officers. *Id.*  Before Burleson could unholster his weapon, Rockwell reached across the narrow hallway and began attacking Lt. Brown with the knives. *Id.*  Lt. Brown also had his weapon holstered and was instead holding a pepper ball gun in the event that Officer Burleson was unable to effectuate a peaceful arrest. (App. p. 3).   Lt. Brown was able to use the pepper ball gun to partially block the knives as Rockwell attempted to stab him. *Id.*  Lt. Brown was also able to fire the pepper ball gun at Rockwell. *Id.*  Rockwell then threw Lt. Brown into the commode, shattering it. *Id.*

19.     Rockwell immediately turned down the hallway towards the main area of the Residence. *Id.*  As he chased Officer Scicluna down the hallway towards the living room, he was swinging the knives at Officer Scicluna's arms and shoulders. (App. pp. 12-13, 19, & 22-23). Officer Burleson quickly unholstered his weapon, a Glock 22, .40mm, and fired one shot at Rockwell during his attack on the Officers. (App. p. 19).   Officers Raley and Garcia each fired their weapons at Rockwell as he came down the hallway, swinging the knives. (App. pp. 12-13, 19, & 22-23).   Officer Raley fired three shots in rapid succession. (App. p. 19).   Officer Garcia fired a single shot. (App. pp. 12-13).   Rockwell stumbled to the ground and as he was getting back up, Officer Scicluna fired a single shot. (App. pp. 22-23).   All five shots were fired in

rapid succession. (App. pp. 203-204). The officers had only a split second to react to

Rockwell's violent attack. (App. pp. 9, 13, 19-20, & 22-23).

20.     Four of the six shots hit Rockwell. (Doc. 16 at p29, par 54). One of the shots

missed Rockwell and hit Officer Raley. (App. pp. 19-20). Officers Ohlde and Lt. Brown never

fired their weapons. (App. pp. 3 & 27).

21.     Officer Scicluna and Lt. Brown suffered multiple lacerations. (App. pp. 2, 22-23,

& 221).

22.     Officer Raley suffered a gun shot wound in the crossfire. (App. pp. 19-20).

23.     Officer Burleson fired his weapon because Rockwell was in the midst of attacking

his fellow Officers with knives. (App. p. 9). Officer Burleson's use of deadly force was

necessary to protect the lives of his fellow Officers. *Id.*

24.     Officers Scicluna, Garcia and Raley fired their weapons because Rockwell was

charging toward them armed with knives, and in the midst of a violent attack. (App. pp. 13, 19-

20, 22-23). Their use of deadly force was necessary to protect their own lives, the lives of those

other individuals in the direct vicinity of Rockwell, and to prevent the serious and perhaps deadly

attack that likely would have resulted from Rockwell's continued efforts. (App. pp. 9, 13, 19-20,

22-23). Rockwell's actions forced Officers Burleson, Scicluna, Raley and Garcia to make split

second judgments about whether to fire their weapons in tense, uncertain and rapidly evolving

circumstances. *Id.* At the moment they fired their weapons, Rockwell was close enough to the

Officers to cause serious and perhaps fatal injuries to them and their fellow Officers with the

knives he possessed. *Id.* Moreover, Rockwell was rushing towards the "Family Room." Cindy

and Richard Rockwell were in the "Family Room." (App. pp. 19-20, 151-152, & 216-217).

25.     Neither Plaintiff is able to articulate why they sued the individual Officers. (App. pp. 98-101, 104-106, & 174-176).

## III. ARGUMENTS AND AUTHORITIES

### A. Summary Judgment Standard

Rule 56(b) of the Federal Rules of Civil Procedure provides that a party against whom a claim is asserted may, at any time, move with or without supporting declarations for a summary judgment in its favor upon all or any part thereof. *See* Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).

The non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial." *Id.* at 587. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992). If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Plaintiffs have brought claims against the Individual Defendants' for excessive force pursuant to 42 U.S.C. § 1983 and assault and battery pursuant to state law. The Defendants assert that they are entitled to summary judgment, based upon their affirmative defenses of qualified immunity and official immunity. Additionally, Officer Ohlde and Lt. Brown assert that they are entitled to summary judgment on the Plaintiffs' claims because the Plaintiffs cannot show an essential element of their claims, the use of force by the officers.

## B. Federal Claim For Excessive Force

### 1. Applicable Legal Standard

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 396 (1982). All claims that a law enforcement officer has used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor, et al.*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). With respect to the defense of qualified immunity, the burden of negating the defense lies entirely with the Plaintiffs. *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Even on summary judgment, the Plaintiffs have the burden to establish that the officers' conduct violated an actual constitutional right and that the officers actions were objectively unreasonable in light of clearly established

law at the time of the conduct in question. *Brumfield v. Holmes*, 551 F.3d 322, 326 (5th Cir.

2008). A plaintiff must show a seizure, plus (1) an injury (2) resulting directly and only from the

use of force that was excessive to the need; and (3) that the force was objectively unreasonable.

*Hudspeth v. City of Shreveport*, 270 Fed. App. 332, 337 (5th Cir. March 9, 2008). If reasonable

public officials could differ on the lawfulness of the officer's actions, he or she is entitled to

qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Thus,

even when an officer's conduct actually violates a plaintiff's constitutional right, the officer is

entitled to qualified immunity if the conduct was objectively reasonable. *Fraire v. City of*

*Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

The test of reasonableness under the Fourth Amendment requires careful attention to the

facts and circumstances of each particular case, including the severity of the crime, the threat

posed to the safety of the officers and others, and whether the suspect is actively resisting arrest

or attempting to evade arrest. *Graham v. Connor, et al.*, 490 U.S. at 396. Moreover, the

excessive force inquiry is confined to the moment of the threat that resulted in the use of force.

*Bazan v. Hidalgo County, et al.*, 246 F.3d 481, 493 (5th Cir. 2001); *see also Fraire v. City of*

*Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("Regardless of what had transpired up until the

shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that

there was a threat of physical harm") *citing Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th

Cir. 1985)(finding no liability where "only fault found against [the officer] was his negligence in

creating a situation where the danger of such a mistake would exist"). Indeed, the inquiry

regarding the use of deadly force is so narrow as to focus on the "facts and circumstances

confronting [the officer] at the time he acted, without regard to his underlying intent or motivation." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003).

Courts must also be mindful, in making their determination, "that police officers are forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* As a matter of law, use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others. *Tennessee v. Garner, et al.*, 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985). If a defendant's use of force was reasonable under the circumstances, no Fourth Amendment violation is established and a plaintiff's claim fails. *Estate of Steven Everett Shaw v. Sierra et al.*, 2010 U.S. App. LEXIS 3397 (5th Cir. February 17, 2010). Supreme Court and Fifth Circuit precedent authorize the use of deadly force when an officer had probable cause to believe that a suspect posed a threat of serious harm or when the suspect attempts to use illegal and deadly force against the officers. *Tennessee v. Garner, et al.*, 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985); *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009); *Cross v. City of Grand Prairie*, 2000 U.S. Dist. LEXIS 2294 *18 (February 28, 2000 N. D. Tex.).

### 2.    Neither Officer Ohlde nor Lt. Brown Used Any Force

As a preliminary matter, neither Officer Ohlde nor Lt. Brown actually used any force against Rockwell. The Plaintiffs' allegations notwithstanding, neither Officer Ohlde nor Lt. Brown ever unholstered their weapons and did not, therefore, use any excessive force against Rockwell.

While the Plaintiffs may have originally named these officers as defendants herein in good faith, they have known for months that these defendants did not discharge their weapons. Indeed, Plaintiffs represented to the Court, in their own pleadings, that they "will dismiss their claims against any officer, whom later information shows is not responsible." Doc. 16 at p. 30, par. 55. Clearly, they have been in possession of undisputed testimony and documentary evidence which demonstrate the above referenced facts and have refused to dismiss Office Ohdle or Lt. Brown. If Plaintiffs cannot offer the Court competent summary judgment evidence suggesting that Officer Ohlde or Lt. Brown actually fired their weapons in the Residence that evening or employed some amount of force that they could characterize, in good faith, as excessive or unlawful, they should be made to explain to the Court why these officers have not been dismissed. Nevertheless, these Officers are entitled to summary judgment on Plaintiffs' claims because the summary judgment evidence establishes that they did not, in fact, use excessive force against Rockwell.

### 3.   The Plaintiffs' Claims are Barred by Qualified Immunity

(a)   Officer Ohlde Did Not Use Any Force Against Rockwell

The undisputed summary judgment evidence establishes that Officer Ohlde never fired her weapon while she was present in the Residence.  In fact, Officer Ohlde never came into physical contact with Rockwell while she was present at the Residence.  She did not employ any amount of force, excessive or otherwise, towards Rockwell.  Accordingly, Plaintiffs simply cannot demonstrate either a constitutional violation or that Officer Ohlde's actions were objectively unreasonable.  Accordingly, Officer Ohlde is entitled to summary judgment based upon her defense of qualified immunity,

(b)    <u>Lt. Brown Only Used a "Pepper Ball" Gun to Defend Himself</u>

Similar to Officer Ohdle, Lt. Brown never fired his weapon in the Residence. The only

force used by Lt. Brown was (1) firing a "pepper ball" gun at Rockwell and (2) using the "pepper

ball" gun to fend off Rockwell's attempts to stab Lt. Brown. A pepper ball gun is less than lethal

force. *Moore v. Detective Boy, et al.*, 200 U.S. Dist. LEXIS 12261 *18 (August 24, 2000 N. D.

Tex.). Moreover, the undisputed testimony established that Lt. Brown only utilized the pepper

ball gun as a defensive measure to save his own life as Rockwell proceeded to stab at him with

knives. Lt. Brown only fired the pepper ball gun after Rockwell charged across the hallway

wielding knives and came into direct physical contact with him. During this momentary struggle,

Lt. Brown sustained injuries from the attack and was never able to unholster his gun. This

Circuit and this District have both held, as a matter of law, that Lt. Brown's conduct was lawful.

*Id.*

Far from employing force that was excessive and clearly unlawful, Lt. Brown employed

barely enough force to save his own life in the face of an immediate and lethal threat and such

force has been found to be "totally justified" under the law. *Id.* Accordingly, Lt. Brown is

entitled to summary judgment on Plaintiffs' claims based upon his defense of qualified

immunity.

(c)    <u>Officers Burleson, Raley, Scicluna, and Garcia Did Not Violate Scott Rockwell's</u>
       <u>Constitutional Rights or Act Objectively Unreasonably</u>

Officers Burleson, Raley, Scicluna, and Garcia each fired their weapons at Rockwell.

Raley fired three shots in rapid succession and Burleson, Scicluna and Garcia each fired once. At

the time that each of the officers fired their weapons, the use of deadly force was employed to

prevent serious and potentially lethal harm to themselves and their fellow officers. Each of these officers was faced with a split second decision, in close quarters, with an assailant who was mentally unstable, violent, armed, and unpredictable.

At the moment Burleson fired his weapon, he knew Rockwell was mentally unstable, was big and strong, was armed with two knives, and was literally in the process of attacking his fellow officers with those knives.

Officer Raley, who was positioned at the end of the hallway, witnessed Rockwell attack Lt. Brown and Officer Scicluna. At the moment Raley fired three shots at Rockwell, Rockwell was chasing Officer Scicluna down the hallway, was rushing towards Raley, only a few feet further down the hallway, and was armed with two large knives. Raley fired at Rockwell because Rockwell was attempting to cause serious and potentially fatal injuries to Officer Scicluna and could, if not stopped, attack his parents -- towards whom Rockwell had directed his anger earlier in the evening. Rockwell's parents were in the "Family Room." Officer Raley stood between Rockwell and his parents.

Officers Scicluna and Garcia each fired one shot at Rockwell. They were both within an arm's length of Rockwell. They both observed Rockwell and realized that he was armed with knives and engaged in a violent attack on their fellow officers. They were also aware that they stood between Rockwell and his parents.

Only a few seconds passed between the moment when Rockwell came flying out of his room with the knives above his head, and the moment he was shot. During that time, pepper balls had been discharged, filling the hallway with smoke and Rockwell had attempted to stab two of the Officers to death.

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY** - Page 15

As a matter of law, the use of deadly force is authorized when an officer has reason to believe the suspect poses a threat of serious harm to himself or others. *Tennessee v. Garner, et al.*, 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985). Rockwell had gone beyond "posing a threat." He was actually <u>in the process</u> of inflicting serious bodily harm on the Officers.

Accordingly, Officers Burleson, Raley, Scicluna, and Garcia are entitled to a summary judgment as a matter of law on Plaintiffs' claim of excessive force pursuant to 42 U.S.C. § 1983 based upon their affirmative defense of qualified immunity.

## C. State Law Claims of Assault and Battery

### 1. Applicable Legal Standard

The Plaintiffs assert state law causes of action against the Individual Defendants for assault and battery. Assault requires that a person intentionally, knowingly, or recklessly cause bodily injury to another. *James v. Beltex Corp.* 2004 U.S. Dist. LEXIS 988 *7 (N.D. Tex. January 14, 2004). Battery requires an offensive touching. *Id.* However, [a]ctivity that would otherwise subject a person to liability in tort does not constitute tortuous conduct if the actor is privileged or justified to engage in that conduct. *Williams v. United States*, 2009 U.S. Dist. LEXIS 100154 *47-49 (S. D. October 20, 2009).

Under Texas law, "government employees are entitled to official immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001) *citing City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). As the Fifth Circuit has noted, "Texas' law of qualified or official immunity is substantially the same as federal immunity law." *Cantu v. Rocha,, et al.*, 77 F.3d 795, 808 (5th Cir. 1996). Texas Courts

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY**
<u>**JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY**</u> **- Page 16**

have long recognized that police officers are engaged in discretionary functions while preforming

their duties. *Casanova v. City of Brookshire*, 119 F. Supp.2d 639, 667 (S.D. Tex. 2000).

"[O]fficial immunity hinges on whether the official's activities were undertaken in 'good faith,'

that is, whether they were objectively reasonable." *Hart v. O'brien*, 127 F.3d 424, 450 (5th Cir.

1997).

To obtain summary judgment on the defense of official immunity, an official must prove

that a reasonably prudent official might have believed that his actions were appropriate under the

circumstances. *Murray v. Earle*, 405 F.3d 278, 294 (5th Cir. 2005).  If a reasonable officer, under

the circumstances, ***could have believed*** that what he was doing would not violate a suspect's

rights, then the official is entitled to official immunity.  *Id.*  Evidence that the official's actions

were negligent is not sufficient to overcome a showing of good faith on the part of the official.

*Id.*  The test for good faith is objective and is substantially derived from the test for good faith in

a qualified immunity claim for federal constitutional violations.  *Roe v. Texas Dep't of Protective*

*and Regulatory Services*, 299 F.3d 395, 413 (5th Cir. 2002).  To controvert an official's summary

judgment proof of good faith, the plaintiff must show that "no reasonable person in the

defendant's position could have thought the facts were such that they justified defendant's acts."

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994).  If officers of a reasonable

competence could disagree on the issue, immunity should be recognized.  *Casanova v. City of*

*Brookshire*, 119 F. Supp. 2d 639 (U.S. Dist. 2000).

### 2.    Neither Officer Ohlde Nor Lt. Brown Assaulted or Battered Rockwell

(a)    <u>Officer Ohlde Did Not Assault or Batter Rockwell</u>

As a preliminary matter, Plaintiffs have alleged that Officer Ohlde committed assault and battery against Rockwell by shooting him in the chin, neck, chest, abdomen and forearm. The undisputed summary judgment evidence establishes that Officer Ohlde never fired her weapon or otherwise made contact with Rockwell. As a result, the Plaintiffs cannot establish the elements of assault or battery against Officer Ohlde. Officer Ohlde is therefore entitled to judgement as a matter of law on the Plaintiffs' claim of assault and battery.

(b)    <u>Lt. Brown Did Not Assault or Batter Rockwell</u>

Plaintiffs have also alleged that Lt. Brown assaulted and/or battered Rockwell by shooting him in the chin, neck, chest, abdomen, and forearm. However, Lt. Brown similarly did not fire his weapon at Rockwell. The only "touching" of Rockwell by Lt. Brown was the defensive act of fending off a knife attack by using his pepper ball gun as a shield. No injury is alleged or occurred as a result of his defensive conduct. Again, Plaintiffs cannot establish the prima facie elements of assault and battery and Lt. Brown is therefore entitled to a judgment as a matter of law on the Plaintiffs' claim of assault and battery.

### 3. The Officers' Conduct was Justified

Defendants are further entitled to a judgment as a matter of law based upon their affirmative defense of justification.

Defendants were forced to make split second decisions while Rockwell was attempting to stab them and their fellow officers with two knives. Texas Penal Codes 9.33 and 9.51, as well as the controlling law of this Circuit, justifies Defendants' use of force.

Additionally, Defendants each had only a split second to make the decision whether to fire their weapons. Rockwell had attacked Lt. Brown and was rushing at Officers Raley, Scicluna and Garcia with two knives. He was within a few feet of them when they acted to defend themselves. They were also the last officers between Rockwell and his parents. Rockwell was behaving in an unstable, unpredictable and violent manner. It was reasonable to believe that he intended to attack his parents, in addition to the officers. Texas Penal Codes § 9.32, 9.33 and 9.51, as well as the controlling law of this Circuit, justifies these officers' use of deadly force. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' assault and battery claims based upon the defense of justification.

### 4.    Plaintiffs' Claims Are Barred by Official Immunity

(a)    <u>Officer Ohlde and Lt. Brown</u>

Officer Ohlde and Lt. Brown are further entitled to a judgment as a matter of law based upon their affirmative defense of official immunity. Both Officers acted in the course and scope of their duties at all relevant and material times. They were attempting to effectuate the arrest of Rockwell when Rockwell attacked. Officer Ohlde did not use any force against Rockwell and Lt. Brown and Lt. Brown acted in good faith, utilizing the pepper ball gun to block Rockwell's attempts to stab him and fired the pepper ball gun in an effort to defend himself and effectuate the arrest. Similar conduct has already been determined to be not only "objectively reasonable," as a matter of law, but "totally justified." *Cross v. City of Grand Prairie*, 2000 U.S. Dist. LEXIS 2294 *18 (February 28, 2000, N. D. Tex.). Officer Ohlde and Lt. Brown are therefore entitled to a judgment as a matter of law on the Plaintiffs' claims for assault and battery.

(b)    Officer Burleson

Burleson made a split second decision to fire his weapon because Rockwell was attempting to stab his fellow officers with two knives.

Burleson is entitled to judgment as a matter of law on the Plaintiffs' assault and battery claim based upon his affirmative defense of official immunity. Officer Burleson was acting within his scope of authority as a Garland Police officer at the time he fired his weapon. In good faith, he made the split second decision to shoot Rockwell to prevent Rockwell from murdering and/or seriously injuring his fellow officers. Accordingly, his conduct was "objectively reasonable" and he is entitled to official immunity.

(c)    Officers Raley, Scicluna and Garcia

Officers Raley, Scicluna and Garcia each had only a split second to make the decision whether to fire their weapons. Rockwell had attacked Lt. Brown and was rushing at them with two knives. He was within a few feet of them when they acted to defend themselves. They were also the last officers between Rockwell and his parents. Rockwell was behaving in an unstable, unpredictable and violent manner. It was reasonable to believe that he intended to attack his parents, in addition to the officers.

Officers Raley, Scicluna and Garcia are entitled to a judgment as a matter of law on the Plaintiffs' assault and battery claim based upon their affirmative defense of official immunity. Officers Raley, Scicluna and Garcia were all acting within the course and scope of their duties as Garland Police Officers at the time they fired their weapons. In good faith, under circumstances that were tense, uncertain and rapidly developing, Officers Scicluna, Raley and Garcia each made a split decision to shoot Rockwell to prevent him from causing serious and/or fatal injuries to

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF QUALIFIED AND OFFICIAL IMMUNITY** - Page 20

themselves, each other and Rockwell's parents, who were positioned in the home behind the officers.  Accordingly, Officers Scicluna, Garcia and Raley's conduct was objectively reasonable and they are entitled to official immunity.

## IV. <u>REQUEST FOR RELIEF</u>

Based on the foregoing and on the Individual Defendants' brief in support of motion for summary judgment, the Individual Defendants respectfully requests that the Court enter a judgment against Plaintiffs in this matter and that Plaintiffs take nothing on their causes of action asserted against each of the Individual Defendants herein.

Respectfully Submitted,


  s/ Scott D. Levine
Scott D. Levine
State Bar No. 00784467
Baxter W. Banowsky
Texas Bar No. 00783593
Kurt C. Banowsky
Texas Bar No. 00787036

**BANOWSKY & LEVINE, P.C.**
12801 N. Central Expressway
Suite 1700
Dallas, Texas 75243
Telephone: (214) 871-1300
Facsimile: (214) 871-0038

**ATTORNEYS FOR THE
INDIVIDUAL DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served via the Court's

ECF system upon all counsel of record contemporaneously with its filing.


                         s/ Scott D. Levine
                         Scott D. Levine